In the Matter of DAVID RIGLE, Appellant, v COUNTY OF ONONDAGA et al., Respondents. DAVID RIGLE, Appellant, v COUNTY OF ONONDAGA et al., Respondents. WILLIAM R. SAWYER, Appellant, v COUNTY OF ONONDAGA et al., Respondents. [701 NYS2d 222] —Judgment unanimously affirmed without costs. Memorandum: Supreme Court properly granted the motions of defendants/respondents (defendants) for summary judgment dismissing the CPLR article 78 proceeding and plenary action commenced by petitioner/plaintiff David Rigle and the plenary action commenced by plaintiff William R. Sawyer. Because the Civil Service Law § 75-b causes of action sought to vindicate only the individual interests of Rigle and Sawyer, respectively, they were properly dismissed because Rigle and Sawyer failed

to file a notice of claim pursuant to General Municipal Law § 50-a and County Law § 52 (*see generally, Roens v New York City Tr. Auth.*, 202 AD2d 274, 274-275; *see also, Mills v County of Monroe*, 59 NY2d 307, *cert denied* 464 US 1018). In any event, Rigle's cause of action under Civil Service Law § 75-b was properly dismissed because defendants had a "separate and independent basis" for discharging Rigle (*Roens v New York City Tr. Auth., supra*, at 275; *see, Matter of Colao v Village of Ellenville*, 223 AD2d 792, 793-794, *lv dismissed in part and denied in part* 87 NY2d 1041). Moreover, by commencing actions pursuant to Civil Service Law § 75-b, Rigle and Sawyer are barred from asserting any other State law cause of action related to the alleged retaliatory discharges (*see, Pipas v Syracuse Home Assn.*, 226 AD2d 1097, *lv denied* 88 NY2d 810).

We further conclude that the 42 USC § 1983 causes of action were properly dismissed. Those causes of action are based on the alleged discharge or constructive discharge of Rigle and Sawyer from their employment with defendant/respondent County of Onondaga (County) based on their exercise of the First Amendment right of free speech. Specifically, Rigle and Sawyer each assert that his termination resulted from his communication with other government agencies and the media concerning complaints of inappropriate activities in the Onondaga County Laboratory (OCL) and Medical Examiner's Office (MEO) and inappropriate conduct by his supervisor, the Onondaga County Medical Examiner (Medical Examiner).

It is well established that a governmental entity may not discharge or retaliate against an employee based on that employee's exercise of the right of free speech (*see, Rankin v McPherson*, 483 US 378, 383, *reh denied* 483 US 1056; *Ezekwo v New York City Health & Hosps. Corp.*, 940 F2d 775, 780, *cert denied* 502 US 1013). On the other hand, a governmental entity has a strong interest "in promoting the efficiency of the public services it performs through its employees" (*Pickering v Board of Educ.*, 391 US 563, 568). "The determination whether a public employer has properly discharged an employee for engaging in speech requires 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees'" (*Rankin v McPherson, supra*, at 384, quoting *Pickering v Board of Educ., supra*, at 568). Pertinent considerations in balancing those interests are "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relation-

ships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise" (*Rankin v McPherson, supra,* at 388). The more an employee's job requires confidentiality, policymaking or public contact, the greater the State's interest in terminating the employee for expressions against the employer and the lesser the employee's First Amendment rights (*see, McEvoy v Spencer,* 124 F3d 92, 103; *Bates v Hunt,* 3 F3d 374, 378; *Kinsey v Salado Ind. School Dist.,* 950 F2d 988, 994, *cert denied* 504 US 941).

Here, the comments of Rigle and Sawyer concerning mismanagement by the Medical Examiner and inappropriate activities in the OCL and MEO may fairly be categorized as a matter of public concern. The record also establishes that Rigle, a pathologist in the MEO, and Sawyer, a toxicologist and the director of the environmental division of the OCL, held positions requiring confidentiality and policymaking and involving public contact (*see generally, Danahy v Buscaglia,* 134 F3d 1185, 1190-1193; *McEvoy v Spencer, supra,* at 104-105; *Vezzetti v Pellegrini,* 22 F3d 483, 486). In that regard, the job descriptions for both positions established that they were exempt from civil service protection and were confidential and/or policy influencing. The job descriptions also provide that employees in those positions must have technical competence or expertise and must manage other employees, and the job descriptions indicate that such employees are authorized to speak in the name of policymakers and would be perceived as policymakers by the public. Moreover, the record establishes that Rigle and Sawyer in fact had contact with elected officials and influenced government programs. Given their job responsibilities, "[c]ommon sense tells us that the expressive activities of [such] highly placed supervisory, confidential, policymaking, or advisory employee[s] will be more disruptive to the operation of the workplace than similar activity by a low level employee with little authority or discretion" (*McEvoy v Spencer, supra,* at 103).

The record also establishes that the comments of Rigle and Sawyer were disruptive to the operation of the workplace, created disharmony among co-workers, interfered with their working relationships with their supervisor, and affected the performance of their duties. Indeed, in his letter of resignation, Sawyer acknowledged that he found it "impossible to treat [the Medical Examiner] with the professional respect which [the Commissioner of Health] ha[s] requested". Under those circumstances, we conclude that defendants' termination of Rigle

and Sawyer, even if in retaliation for their comments to the media and other government agencies concerning the operation of the OCL and MEO, did not violate their First Amendment rights (*see generally, Connick v Myers*, 461 US 138, 149-154).

In any event, Rigle's 42 USC § 1983 cause of action was properly dismissed because defendants established as a matter of law that the statements of Rigle were not a motivating factor for his termination, and Rigle failed to raise an issue of fact (*see, Frank v Relin*, 1 F3d 1317, 1328-1329, *cert denied* 510 US 1012; *Verri v Nanna*, 972 F Supp 773, 784). Defendants established that, even in the absence of the protected conduct, they would have terminated Rigle based on his having conducted an autopsy in the presence of a minor and a convicted child pornographer and his having failed to obtain certification from the American Board of Pathology, as required by his job description. Moreover, the 42 USC § 1983 causes of action against defendants James R. Miller and Nicholas J. Pirro were properly dismissed on the ground of qualified immunity. Government agents are entitled to qualified immunity from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (*Harlow v Fitzgerald*, 457 US 800, 818). The acts of the individual defendants with respect to Rigle and Sawyer occurred in 1993, when "the law was unsettled regarding whether an employee's policymaking status automatically immunized an employer's adverse action" against the employee for exercising his or her First Amendment free speech rights (*McEvoy v Spencer, supra*, at 105).

Finally, Rigle's CPLR article 78 proceeding was properly dismissed. As an employee in a noncompetitive class, designated as confidential and/or policy influencing, Rigle was not entitled to a civil service hearing before his termination (*see,* Civil Service Law § 75). Additionally, the record does not support the claim of Rigle that he was entitled to reinstatement because his termination violated Civil Service Law § 71. (Appeal from Judgment of Supreme Court, Onondaga County, Nicholson, J.—CPLR art 78.) Present—Green, J. P., Lawton, Pigott, Jr., Hurlbutt and Callahan, JJ.