[906 NYS2d 222]

YAN PING XU, Appellant, v NEW YORK CITY DEPARTMENT OF HEALTH, Respondent.

First Department, August 3, 2010

APPEARANCES OF COUNSEL

*Yan Ping Xu*, appellant pro se.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Larry A. Sonnenshein* and *Leonard Koerner* of counsel), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

In this CPLR article 78 proceeding the pro se petitioner alleges that she was terminated from her employment with the New York City Department of Health after reporting evidence of alleged wrongdoing in the accumulation of data concerning the distribution of child vaccines in New York City. Her petition was dismissed for several reasons, including failure to exhaust administrative remedies, failure to establish that she reported the wrongdoing to the appropriate authorities, and failure to file a timely notice of claim.

On this record we cannot determine as a matter of law that petitioner either failed to exhaust administrative remedies or take the necessary steps to protect her whistleblower status. Accordingly, we remand the petition for a hearing on these issues, and also for further consideration of the merits of her request to file a late notice of claim.

The following factual recitation, to which we accord deference in assessing the City's motion to dismiss, is taken from the petition. It is axiomatic that, on a motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

On June 4, 2007, petitioner was hired as a city research scientist for the Vaccines for Children Program (VFC) of the City of New York's Bureau of Immunization (BOI), a division of the Department of Health and Mental Hygiene (DOH). She alleges that her duties primarily involved data analysis and improving the methodology by which the databases were formulated in the storage and handling of vaccines in city schools. During her nine months of employment she did not receive any formal performance evaluations, but claims to have informally received verbal and written compliments from her superiors.

She prepared a VFC Annual Program Management Survey Qualification report at the request of her supervisor, the Deputy Assistant Commissioner for the BOI, on February 29, 2008. Petitioner contends that the report exposed the fact that significantly inaccurate data had been submitted to the Centers for Disease Control and Prevention (CDC) for many years, and that one of the reasons for the data inaccuracy was that the BOI did not comply with the CDC guideline, which requires that the Provider Enrollment Form be signed annually and the Provider Profile be updated annually. Petitioner further alleged that on March 4, 2008 she reported to her supervisor that she had uncovered data discrepancies which had been reported to the CDC, and these discrepancies indicated that BOI personnel were not following CDC's rules.

Petitioner claims that as a result of her reports she was terminated less than two weeks later, by letter dated March 13, 2008, although her performance evaluation was not dated until March 14, 2008, the day after her termination. The evaluation, covering the period June 4, 2007 through March 14, 2008, rated her work unsatisfactory in areas relating to her ability to conduct scientific research and work with other personnel to develop strategies and operational plans, and her willingness to accept work assignments. Neither the evaluation report nor the letter of termination advised petitioner of any process for challenging her termination, although the evaluation did recite that petitioner could offer a written rebuttal "for future reference."

This proceeding was commenced on July 14, 2008, and was amended twice on August 19, 2008, and September 8, 2008. The petition sought removal of the unsatisfactory ratings, reinstatement and back pay. The essence of petitioner's claims is that the termination was made in bad faith because she exposed wrongdoing in VFC's reporting of data to the CDC, and that this inaccurate reporting presented a clear danger in that children were not being immunized.

By notice of motion dated September 30, 2008 and filed January 29, 2009, respondent DOH moved to dismiss the three petitions. Respondent contended that the petitions should be consolidated and dismissed because a notice of claim, which had not been filed, is a precondition to bringing a whistleblower claim against the City. Additionally, respondent argued the claim was inadequate because under Civil Service Law § 75-b (the Whistleblower's Law) a report of wrongdoing to a supervisor alone is insufficient. Respondent claims the employee must also have made a report both internally to "the appointing authority" and to a "governmental body." Respondent also contended that petitioner had been hired subject to a one-year probationary period, and had failed to state a claim that she had been terminated in bad faith, citing Personnel Rules and Regulations of the City of New York (55 RCNY Appendix A) ¶ 5.2.1 (a). That rule also requires that "[a]ppointees shall be informed of the applicable probationary period."

Petitioner opposed the motion, and, by notice dated November 11, 2008 (eight months after her March 13, 2008 termination), cross-moved for leave to file a late notice of claim and amended petition, and annexed a proposed notice of claim. She denied that at the time of her termination she was still a probationary employee, since she had completed what she contends was the applicable six-month period. Petitioner also contended that she had given notice of her whistleblower claim within 90 days of her termination.

The motion court found that the petition was improperly commenced because it was served before it was filed in violation of CPLR 304 (a). Nevertheless, the court recognized that petitioner was self-represented and did not use this finding as a basis for its ultimate disposition of dismissal.

The court noted that respondent had not submitted an affidavit from petitioner's supervisor or any person with knowledge of her work, while petitioner had produced copies of e-mails and notes showing positive statements had been made by her

supervisor and others concerning her work, and nothing in these showed she was failing to meet standards. Further, the court observed, neither side had provided a copy of any information provided to petitioner at the time of hiring concerning the length of her probationary service, or that "sufficiently established the authenticity or currency of the document relied upon to show petitioner's status" (22 Misc 3d 1116[A], 2009 NY Slip Op 50147[U], *4).

Therefore, the court observed, there were questions of fact concerning petitioner's employment status at the time of her termination, and, thus, as to whether her termination itself was procedurally proper.

The court concluded, however, that petitioner's whistleblower claim was undermined by her failure to sufficiently disclose to the agency that the wrong data was being used, because she only apprised her immediate supervisor, who was the individual who had committed the wrongdoing. It also found that if petitioner were a permanent employee, as she contended, she was first required to appeal her performance evaluation to an appeals board under paragraph 7.5.5 (a) and (b) of the Personnel Rules and Regulations. Finally, the court found, a timely notice of claim, which petitioner did not file, was a condition precedent to a claim of retaliatory firing.

On the appeal, petitioner argues, first, that she was a permanent employee who could not be fired at will. Respondent does not pursue its claim that she was a probationary employee, but argues, however, that even if petitioner were not a probationary employee, the petition was premature because permanent submanagerial employees have an appeals process for challenging performance evaluations (¶ 7.5.5 [a], [b]) which petitioner could not bypass.

██ The City Personnel Rules and Regulations referenced by the court do provide a mechanism for "permanent submanagerial employees" to appeal unfavorable performance evaluations (¶ 7.5.5). The record, however, indicates that petitioner sought administrative review of her negative evaluation prior to commencing suit, but was rebuffed. She wrote an e-mail to her supervisor on May 19, 2008 requesting review of her performance evaluation and a letter to the Bureau of Human Resources on June 18, 2008, also seeking review of her performance evaluation. At a minimum, these items of correspondence suggest that petitioner did seek review, and apparently did not receive any response. Consequently, it cannot be

concluded, as respondent avers, that petitioner failed to exhaust her administrative remedies. Thus, the matter should be remanded for a hearing as to whether she was given the opportunity to avail herself of the appeals process. If, at such hearing, it is determined that she was not, the entire proceeding should be referred back to the agency so that petitioner can be afforded the appropriate internal appeals process.

Petitioner also challenges the court's finding that the whistleblower claim under Civil Service Law § 75-b should fail because she did not comply with the notification requirement. Petitioner's primary complaint is that the unsatisfactory evaluation was issued, and she was then terminated, after she reported to her supervisor that a report to be provided to CDC was based on outdated data, and insisted that a supplemental report be provided disclosing the inaccuracies to the CDC. Her allegations implicate Civil Service Law § 75-b—the Whistleblower's Law—which provides, in pertinent part, that a public employee cannot be subject to adverse action for having disclosed to a "governmental body" information which either concerns a violation of a regulation that presents a substantial and specific danger to public health, or which he or she "reasonably believes constitutes an improper governmental action":

> "2. (a) A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."

The employee also must have made a "good faith effort" to provide the information to the "appointing authority" and must provide the "appointing authority or [his or her] designee a reasonable time to take appropriate action unless there is imminent and serious danger to public health or safety" (Civil Service Law § 75-b [2] [b]). If the employee does provide such information to the appointing authority, he or she "shall be deemed to have disclosed information to a governmental body under paragraph (a) of this subdivision" (*id.*).

■ Respondent contends that it is undisputed that petitioner did not provide the "mandated notification to the appointing

authority," and therefore her pleadings are inadequate to state a whistleblower claim. On this record, however, there is no basis for concluding that petitioner's notification to her supervisor, who apparently then discussed the matter with his superior, the Assistant Commissioner, was insufficient. Petitioner alleges that she discussed the matter with him and urged that a report be submitted to the CDC explaining the problem with the data in the report that had been submitted. Respondent does not explain whom else petitioner could have, or should have notified (*see Tipaldo v Lynn*, 48 AD3d 361 [2008]). Thus, the hearing on remand should inquire into the issues of what other persons petitioner should have contacted, and whether her failure to do so precluded the assertion of this lawsuit.

■ Respondent also claims, without citation, that it is impermissible for a public employee to bring a whistleblower claim within an article 78 proceeding. Yet, courts have entertained article 78 petitions brought by public employees alleging they were terminated in violation of the Whistleblower's Law (*see e.g. Matter of Garrity v University at Albany*, 301 AD2d 1015 [2003] [reinstating article 78 claim alleging unlawful retaliatory discharge, although petitioner could not establish all elements of whistleblower claim]; *Matter of Chamberlin v Jacobson*, 260 AD2d 317 [1999] [in article 78 proceeding, petitioner failed to demonstrate that he was terminated solely for reasons violative of Whistleblower's Law]; *Matter of Weber v County of Nassau*, 215 AD2d 567 [1995], *lv dismissed in part, denied in part* 87 NY2d 1053 [1996] [in article 78 proceeding, trial court correctly directed trial of probationary employee's claim that she was terminated in violation of Whistleblower's Law because she insisted on reporting child abuse by a patient at the psychiatric hospital where she worked; petitioner did not establish merits of claim]).

Petitioner also contends that the court erred in dismissing the article 78 claim for failure to file a notice of claim within 90 days. She argues that she suffered a retaliatory firing, which is not a tort claim governed by General Municipal Law § 50-e. Petitioner urges instead that a retaliatory filing suit is akin to an employment claim under the Human Rights Law, specifically Executive Law § 296.

Petitioner is correct that a cause of action under section 296 does not, under certain circumstances, require as a condition precedent the filing of a notice of claim (*see e.g. Picciano v Nassau County Civ. Serv. Commn.*, 290 AD2d 164, 169-174 [2001];

*Sebastian v New York City Health & Hosps. Corp.*, 221 AD2d 294 [1995]; *Mills v County of Monroe*, 89 AD2d 776 [1982], *affd* 59 NY2d 307 [1983], *cert denied* 464 US 1018 [1983]). Nevertheless, the Court of Appeals made clear in *Mills* that even a cause of action under the Executive Law will be subject to dismissal for failure to file a notice of claim if the only right sought to be vindicated is a private one (59 NY2d at 311-312). As noted above, petitioner only seeks claims unique to herself, i.e., name clearing, reinstatement and back pay.

In any event, petitioner's attempt to analogize her section 75-b claim under the Civil Service Law\* to causes of action under the Executive Law is unavailing. Jurisprudence has made clear that a notice of claim is required as a condition precedent in cases similar to petitioner's (*see e.g. Rigle v County of Onondaga*, 267 AD2d 1088, 1088-1089 [1999], *lv denied* 94 NY2d 764 [2000] [similar claim against county requires filing of notice of claim pursuant to former General Municipal Law § 50-a and County Law § 52]; *Roens v New York City Tr. Auth.*, 202 AD2d 274 [1994] [wrongful discharge claim against New York City Transit Authority must be preceded by a notice of claim pursuant to Public Authorities Law § 1212]). Thus, in order for petitioner to pursue her wrongful discharge claim, compliance with General Municipal Law § 50-e was required.

This does not, however, end the inquiry. Petitioner did cross-move within this proceeding for permission to file a late notice of claim. Although respondent argues that such an application must be made in a separate, special proceeding, it is clear that the law provides otherwise and that the court had jurisdiction to entertain the request. "In the absence of a pending action, an application for leave to serve a late notice of claim must be brought as a special proceeding" (*Matter of Jordan v City of New York*, 38 AD3d 336, 338 n 2 [2007] [internal quotation marks and citations omitted]). "Where, as here, the court has obtained jurisdiction over the parties, it shall not dismiss an action for lack of proper form but must 'make whatever order is required for its proper prosecution' " (*Matter of Sullivan v Lindenhurst Union Free School Dist. No. 4*, 178 AD2d 603, 604 [1991], quoting CPLR 103 [c]; *see also Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y.*, 31 NY2d 184 [1972]).

---

\* Petitioner's attempt to invoke Labor Law § 740 is also unavailing, since that statute is not applicable to wrongful discharge claims against public employers (*Hanley v New York State Exec. Dept., Div. for Youth*, 182 AD2d 317, 320 [1992]).

Thus, although a successful special proceeding to file a late notice of claim cannot be converted to a plenary action, since the requirements of CPLR 304 and 306-a must be met (*see Harris v Niagara Falls Bd. of Educ.*, 6 NY3d 155 [2006]), a request to file a late notice of claim can be determined within the confines of an otherwise properly commenced action.

Section 50-e (5) provides for a discretionary extension of the 90-day time limit within which to file a notice of claim (*Casias v City of New York*, 39 AD3d 681, 682 [2007]; *see* General Municipal Law § 50-e [1] [a]; [5]). The purpose of the requirement is "to protect those public and municipal corporations against stale tort claims, and to provide them with an opportunity to timely and efficiently investigate those claims" (*Casias* at 682).

> "The statute enumerates various factors relevant to an application for an extension, but it sets one apart from all the others: 'the court shall consider, in particular, whether the public corporation . . . acquired actual knowledge of the essential facts constituting the claim within the [90-day period] or within a reasonable time thereafter' " (*id.*, quoting General Municipal Law § 50-e [5]).

The statute also requires the showing of a reasonable excuse for the delay and a showing of lack of prejudice to the public corporation in its defense on the merits (*see Matter of Dell'Italia v Long Is. R.R. Corp.*, 31 AD3d 758, 759 [2006]).

The record indicates that petitioner sent a letter dated April 28, 2008 promptly to the Department of Investigation advising of her whistleblower claim, and an e-mail to her former supervisor on June 18, 2008 (outside the 90-day period), which claimed that she had been wrongfully terminated. Inasmuch as the motion court denied the application to file a late notice partly on grounds that the City did not acquire knowledge of the essential facts within 90 days, the directed hearing should also inquire into whether, at least, the letter to the Department of Investigation gave the requisite notice.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Paul G. Feinman, J.), entered January 29, 2009, which granted respondent's motion pursuant to CPLR 7804 (f) and 3211 (a) (7) to dismiss petitioner's CPLR article 78 proceeding seeking reinstatement to her former position with back pay and removal of an unsatisfactory rating, and denied petitioner's cross motion for leave to file a late notice of claim, should be modified, on the law, the petition reinstated,

the matter remanded for further proceedings consistent herewith, and otherwise affirmed, without costs.

ANDRIAS, J.P., CATTERSON, DEGRASSE and MANZANET-DANIELS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered January 29, 2009, modified, on the law, the petition reinstated, the matter remanded for further proceedings consistent herewith, and otherwise affirmed, without costs.