| **Dume v City of New York** |
| 2025 NY Slip Op 30992(U) |
| March 26, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 155486/2023 |
| Judge: Ariel D. Chesler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 62M

-------------------------------------------------------------------------------X

JOSE DUME,

                             Plaintiff,

                     - v -

CITY OF NEW YORK, PETER FIORILLO, SEAN PITMAN,
JOHN WILSON, ROSEMARY DAVIS,

                         Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 155486/2023 |
| **MOTION DATE** | 01/25/2024 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. ARIEL D. CHESLER:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26

were read on this motion to/for                DISMISS                    .

      This is an action by a New York City police officer for discrimination based on national origin, and retaliation for engaging in protected activities. Defendants now move to dismiss Plaintiff's First Amended Complaint ("FAC") (NYSCEF Doc. No. 2) for failure to state a claim (CPLR 3211[a][7]). Plaintiff opposes the motion and cross-moves for leave to file a Second Amended Complaint ("SAC").

## FACTS / THE COMPLAINT

      Plaintiff is a white male Muslim of Hispanic and Dominican origin who joined the New York Police Department ("NYPD") in 2012 (FAC, ¶¶ 2-4. 10). Since December 23, 2022, he has been a Sergeant in Public Service Area ("PSA") 4 (*id.,* ¶¶ 199, 203). Prior to this, he was a Detective assigned to Manhattan North Narcotics since 2017, where  he was primarily responsible for buying illegal drugs from drug dealers. From 2017 through 2020, Plaintiff had evaluation scores of 4.5 or 5.0 out of 5.0 performance evaluations. Due to his stellar

**155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL**
  Motion No.  001

**Page 1 of 14**

1 of 14

[* 1]

performance, he was promoted to Detective on 3rd Grade on December 21, 2018 (*id.*, ¶¶ 16-18, 21, 26).

During the relevant times, plaintiff reported to defendant Sean Pitman, a white male Sergeant one rank higher than plaintiff. Pitman reported to non-party Lieutenant Ramirez, a Hispanic male who reported to non-party Captain Allen, a Black male. Allen, in turn, reported to defendant Sean Wilson, a Deputy Inspector, and Wilson reported to defendant Peter Fiorillo, also a Deputy Inspector. Defendant Rosemary Davis is Lieutenant and the Integrity Control Officer of the Manhattan Detective Bureau (*id.*, ¶¶ 6-9. 35-38, 182).

Plaintiff alleges on July 14, 2020, Fiorillo complimented plaintiff's "great work" but then added that he "knew [Plaintiff] liked buying drugs." Plaintiff found this statement to be "weird", but indicative of how upper management treated undercover officers, who are mostly minorities because they are tasked with making drug buys in minority neighborhoods (*id.*, ¶¶ 27-28).

In late 2020, there were several investigations in misuse of overtime by officers in plaintiff's unit. Plaintiff, who had made an anonymous complaint about what he believed to this fraudulent practice, was rumored to have been the cause of this scrutiny. On the orders of Fiorillo, however, plaintiff was informed that an Inspector could approve overtime even it was not being earned, and the Internal Affair Bureau closed the investigation after Fiorillo did so. Nevertheless, plaintiff was given a perfect 5.0 performance evaluation for 2021 (*id.*, ¶¶ 40-41 47-51, 65-66).

Plaintiff had passed the civil service examination for Sergeant sometime between 2017 and 2020 but deferred the promotion as he enjoyed working as an undercover officer. He again deferred it in the summer of 2022. Around that time, Pitman informed plaintiff that Fiorillo was unhappy that he was not taking unearned overtime. To punish plaintiff for not committing that

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Page 2 of 14
Motion No.  001

2 of 14

[* 2]

fraud, Fiorillo sought to strip plaintiff of his overtime but was forced to find other ways to harass him for objecting to the illegal practice. Sometime later, Pitman began inquiring more seriously about when plaintiff would be taking a promotion to Sergeant, which plaintiff understood to mean that Pitman wanted plaintiff out of the unit (*id.,* ¶¶ 22-23, 55-60, 67-68).

Plaintiff's son and son's mother are both Ukrainian, with family in the Ukraine who had fled to Poland to avoid the war with Russia (id at ¶¶52-54). In July 2022, plaintiff filed a leave of absence form (known as a "28") requesting nine weeks off between July and September 2022 to help his partner's family (FAC at ¶¶ 70-72). The request was approved by Ramirez, Fiorillo, and a Sergeant Shanahan three weeks prior to plaintiff's scheduled leave date (id at ¶¶73-75). Following the approval, Fiorillo asked plaintiff if he needed any support from the NYPD related to his partner's family problem and offered to send plaintiff to either to Psychological Services, the Employee Assistance Unit or Police Organization Providing Peer Assistance, which plaintiff declined  (*id.,* ¶¶ 70-78).

In the Fall of 2022, several officers from plaintiff's Unit attended an event called the Electric Zoo Music Festival against the orders of Fiorillo. On September 2, 2002, Pitman called plaintiff when he was in Europe to ask if plaintiff could speak with one of his Electric Zoo contacts to allow the officers into the VIP section to talk to women. Plaintiff missed the call, but the next day sent messages on a unit group chat stating that whoever wanted to go to Electric Zoo could do so on duty without supervision. Several officers got into the VIP room and stole expensive bottles of champagne, and word spread through the group chat of this misconduct. Plaintiff, who was monitoring the group chat, waited to see if anyone would be disciplined, but over the course of the weekend began deleting every text in the chat referencing the Electric Zoo. (*id.,* ¶¶ 79-87).

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Page 3 of 14
Motion No.  001

3 of 14

[* 3]

On September 6, 2022, after seeing that none of the officers were placed on modified duty, plaintiff filed an anonymous complaint with Internal Affairs. In it, he explained that Pitman had authorized officer to go to the Electric Zoo; that a group of officers got drunk while possessing firearms; that they used department vehicles to drive intoxicated co-workers home; that one officer had "sex with a drunk female," that "[t]he people involved… deleted messages tampering with the current investigation". Plaintiff also attached screenshots showing the deletion of messages. Plaintiff filed another complaint after no action was immediately taken (*id.*, ¶¶ 88-92).

Plaintiff alleges that he suffered retaliation for reporting the misconduct. About a week later, a co-worker informed plaintiff that he was believed to have filed the complaint. A week after that, Wilson asked Pitman who approved plaintiff's six-week leave, and plaintiff then began hearing from co-workers that the defendants were speaking about him in a derogatory manner and threatening him with command discipline if he did not return from his approved vacation (*id.*, ¶¶ 93-97).

On September 21, 2022, Pitman called plaintiff and ordered him to call Wilson. When he did, "What is a Dominican doing in Ukraine? I thought you were dead." Plaintiff asserts that he was "greatly offended", and believed the statement to show Wilson's animus towards Hispanics and in particular Dominicans. After plaintiff complained and expressed his disapproval of the comment Wilson said that he just cared about plaintiff, which plaintiff disputed. Plaintiff advised Wilson that Ramirez had approved his leave through September 27, 2022 and Wilson said he would see plaintiff then (*id.*, ¶¶ 99-109).

Despite being a mandated reporter of discrimination, Wilson failed to report the incident to the Office of Equal Employment Opportunity. Instead, a couple of days later Wilson ordered

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 4 of 14

Pitman to give plaintiff a negative performance evaluation. Defendants attempted to give him a 2.5 out of 5.0, which would have likely prevented his promotion to Sergeant, despite having already given him a 4.5 out of 5.0 for the year (*id.*, ¶¶ 110, 117-20).

Wilson and Pitman then sent officers to plaintiff's home to retrieve and destroy the more favorable evaluation, using the pretext that plaintiff was AWOL despite Pitman having spoken to him just two days earlier. Defendants later falsely submitted a statement to the EEOC falsely repeating this explanation, even though they had followed none of the procedures required when an officer is suspected to be AWOL. Upon learning of the plan to destroy the evaluation, plaintiff had a trusted friend retrieve it from where he kept it on his work desk. Pitman told plaintiff that he tried to stop the attempted seizure but Wilson and Fiorillo did what they wanted (*id.*, ¶¶ 111-116, 126-32).

Upon his return from Europe, on September 26, 2022, plaintiff went to One Police Plaza to file a formal complaint. He met with the Detective Bureau's Executive Officer, Patrick Cortright, who had previously supervised Wilson in Manhattan North and was his friend. After hearing plaintiff describe the alleged discriminatory and retaliatory conduct of Wilson and Pitman, Cortright filed a complaint only against Pitman, completely disregarding plaintiff's complaint about Wilson's reference to plaintiff's Dominican origin (*id.*, ¶¶ 137-40).

Cortright then ordered plaintiff to go to Psychological Services for a psychiatric evaluation. His gun, shield and identification card were confiscated, and the exit was guarded by an officer. Plaintiff told the psychiatrist that he did not need to be there and attempted to leave, but was told he had to go through with the evaluation. After hearing plaintiff's explanation the whole situation, the doctor was confused why he was being forced to be evaluated and after speaking to a lieutenant in the Chief of Department he informed plaintiff the Lieutenant wanted

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 5 of 14

5 of 14

to 'psych out' plaintiff by stripping him of his gun and shield and placing him on restricted duty. The doctor refused to do that and cleared plaintiff to go home, and his gun was returned. On the form clearing plaintiff, the Lieutenant specifically wrote that the evaluation was ordered by Cortright (*id.*, ¶¶ 141-60).

Thereafter, plaintiff's overtime was cut from 40 hours a month to almost zero, costing a minimum of $25,000 per year in lost income. He was also told that he could no longer change tours, and in October denied time off he requested for religious reasons. In November, he was punished by being forced to stand outside the back of a building for his entire tour. Another Dominican officer was punished that way and plaintiff never witnessed the punished be meted out to anyone but Dominican officers (*id.*, ¶¶ 160-75).

Plaintiff requested to take time in December 2022 but was denied, being told that it was because he went to Ukraine earlier in the year. He also informed that the denial was due to the needs of the department that day, despite that his unit had too many undercover detectives. When he repeated his request, he was told he would have to seek approval from Davis, who unbeknownst to him, was transferred into his command for having harassed a Muslim Sergeant on the basis of his religion. Davis denied the request, but the time off was later approved by the Office of Equal Employment who told him she was wrong to do so. Of the 60 officers in his unit, plaintiff was the only one who needed to have his vacations approved in that manner (*id.*, ¶¶.176-92).

While on vacation on December 8, 2022, plaintiff was subject to an allegedly random drug test and then another one on after December 15 after he returned to work. Frustrated by what he saw as discriminatory and retaliatory treatment, he applied for a promotion to Sergeant and received it on December 23, 2022. Following that, he overheard Wilson ask Shanahan "how

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 6 of 14

6 of 14

did he get promoted, he is supposed to get charges and specifications. Inspector Cortright was supposed to jam him up". He was also stripped of thirty hours of overtime, worth approximately $2,500 (*id.*, ¶¶ 193-202).

Plaintiff was transferred back to PSA 4. However, during his regular day off on January 13, 2023, he returned to Manhattan North to use the gym. Upon seeing him, Wilson tried to stare him down and then kicked him out, saying he could only use the gym for an hour. Wilson also kicked out two other Dominican undercover officers, while allowing a Puerto Rican officer to stay even though like Wilson, that officer had been there over an hour. Plaintiff immediately tried to file a complaint for retaliation, but the NYPD refused to investigate or let him do so. Plaintiff and his family then relocated to North Carolina at great expense due to fear of further retaliation (*id.*, ¶¶ 204-225).

In April 2023, plaintiff learned that Wilson and Davis were manufacturing allegations against him that he was AWOL during his 2022 European trip. Formal charges and specification were issued against him on June 13, 2023, with defendants falsely claimed that he had not filed the 28 leave of absence form. Plaintiff alleges that because that form is not scanned into the NYPD's system, its absence is often exploited to retaliate by bringing charges that an officer is AWOL. Because of the charges, plaintiff's promotion is at risk because he is on indefinite probationary status (*id.*, ¶¶ 226-240).

Plaintiff commenced this action on June 18, 2023. Based on all of the above allegations, plaintiff asserts that he was subjected to discrimination, retaliation, and a hostile work environment based on his Dominican national origin. Plaintiff further asserts that he was retaliated against for filing complaints about corruption and discrimination, leading to adverse employment actions, including the denial of overtime, unfavorable assignments, and disciplinary

[* 7]

charges. The FAC sets forth seven causes for action,[1] under the New York State Human Rights Law ("SHRL") (New York State Executive Law § 296), the New York City Human Rights Law ("CHRL") (New York City Administrative Code § 8-107) and the New York Civil Service Law ("CSL) § 75-b ("§ 75-b").

Civil Service Law § 75-b and Retaliation Claims

The claim under CSL § 75 is dismissed. As relevant here, CSL § 75-b(2)(a) provides that:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information ... which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employee or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

Under CSL § 75-b[1][d], a personnel action is "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance". CSL § 75-b[3][b] further provides:

> [w]here an employee is subject to a collectively negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions and which contains a final and binding arbitration provision to resolve allegations of such provisions of the agreement and the employee reasonably believes that such personnel action would not have been taken but for the conduct protected under subdivision two of this section, he or she may assert such as a claim before the arbitrator.

---

[1] Plaintiff has withdrawn Count VII for violations of New York Labor Law § 740, and the New York State Civil Service Law § 75 as against the individual defendants (see Plaintiff's Memorandum of Law [NYSCEF Doc. No 22], p. 5).

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL                    Page 8 of 14
 Motion No.  001

8 of 14

[* 8]

Plaintiff asserts that the denial of overtime in retaliation for his complaints about the officers' misconduct at the Electric Zoo festival violated the statute. The City argues, *inter alia*, that plaintiff failed to exhaust his administrative remedies under the collective bargaining agreements of the Detectives Endowment Association (NYSCEF Doc. No. 8) and the Sergeants' Benevolent Association (NYSCEF Doc. No. 9) (together, the "CBAs"). The Court concurs with the City on this issue. The claim is precluded by the First Department's holding in *DiGregorio v. MTA Metro-N. R.R.,* 140 AD3d 530, 530–31 [1st Dept 2016] ["Plaintiff's sole claim here against defendant . . . was made pursuant to section 75-b of the Civil Service Law (the whistle-blower statute) and may not be litigated in this forum . . . [b]ecause plaintiff was "subject to a collectively negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions and which contains a final and binding arbitration provision"]).

Plaintiff counters that the denial of overtime was exempt from arbitrations because it did not involve a violation, misinterpretation, or misapplication of the NYPD rules, regulations or procedures, but rather that defendants took an adverse personnel action against him in retaliation for a disclosure protected under Civil Service Law § 75-b(2)(a). While this theory was accepted by the Second Department in *Flynn v New York State Dept of Corr. & Cmty. Supervision*, 201 AD3d 885, 886 (2d Dept 2022) and by a New York County trial court relying on *Flynn* in *Vucinaj v New York City Police Dept.*, 2023 WL 4401151 [Sup Ct, New York Co. 2023]), the Court is bound by the broad First Department holding in *DiGregorio*. Indeed, insofar as whistleblower claims invariably involve accusations of retaliation, the arbitration requirement of CSL § 75-b[3][b] would be rendered meaningless. In any event, the City has identified specific provisions of the CBA's which govern overtime rights. In view of this determination, the parties' other arguments under the statute need not be discussed. Additionally, plaintiff's retaliation

[* 9]

claims under the SHRL and the CHRL cannot survive, as they relate to the same protected activity covered by § 75-b and arbitrable under the CBAs (*see Rigle v County of Onondaga*, 267 AD2d 1088, 1089 [4th Dept 1999]; *see also Shanahan v. New York*, 2011 WL 223202, at \*11 [SDNY 2011]["Moreover, by bringing a Section 75–b claim, a plaintiff is barred from asserting any other State law claims related to the alleged retaliation"]).

Even if the State and City retaliation claims were not barred, they would fail. First, to the extent that any retaliatory act is claimed to have occurred prior to the alleged protected activity or more than two months after any alleged protected activity, Plaintiff cannot establish a causal connection (*See Nobrega v. MTA Metro-N. R. R.,* 2015 N.Y. Misc. LEXIS 1284, at \*23 [Sup. Ct. NY Co. 2015][collecting cases]; *see also Cunningham v. Consolidated Edison Inc.,* 2006 WL 842914 at \*19 [EDNY 2006][the "passage of two months between the protected activity and the adverse action seems to be the division line"]).

Further, most of the purported retaliatory acts that are alleged to have occurred prior to November 26, 2022, cannot form the basis of a retaliation claim. Specifically, the inability to give a negative evaluation, being referred to a psychological evaluation which determined him fit for duty that same day, having vacation time requests denied twice (after having gone on a several month extended leave), and having to undergo two drug tests are not adverse actions under either the State or City HRL (*See Kirkland-Hudson v. Mount Vernon City Sch. Dist.,* 2023 U.S. Dist. LEXIS 54339, at \*72-3 [S.D.N.Y. 2023]["requiring Plaintiff to submit to a medical examination does not constitute an adverse action in the retaliation context."]; *Aykac v. City of New York*, 2022 NY Slip Op 33639(U), 2022 N.Y. Misc. LEXIS 10629, at \*33 [Sup. Ct. N.Y. Co. 2022][dismissing retaliation claim that Plaintiff was referred to NYPD psychological evaluation where it was within the referring individual's "scope of responsibility to refer the

Plaintiff for an evaluation."]; *Scott v. New York City Tr. Auth.,* 2022 N.Y. Misc. LEXIS 1055, at *11 [Sup Ct. N.Y. Co. 2022][drug test administered without justification did "not constitute an activity that disadvantaged plaintiff to the point where he c[ould] recover under a retaliation theory."]; *Nidzon v. Konica Minolta Bus. Solutions, USA, Inc.*, 752 F. Supp. 2d 336, 355 [S.D.N.Y. 2010][granting summary judgment on the plaintiff's CHRL claim which rested, in part, on the allegation that his employer denied one of his two springtime vacation requests because the action did not "amount to anything more than petty slights or trivial inconveniences."]).

Plaintiff's allegation of what is essentially a conspiracy theory that unnamed co-workers, sometime before his return to the United States in September 25, 2022, were sent to his house to "break into" it and "steal the evaluation, destroy it, and then issue [Plaintiff] a 2.5 performance review," is facially frivolous and fantastical and cannot form the basis of a retaliation, or any other, claim (*See Gallop v. Cheney*, 642 F.3d 364, 368 [2d Cir. 2011]). Relatedly, there is nothing alleged that supports the claim that Plaintiff and his family were forced to flee New York and relocate to North Carolina.

Discrimination and Hostile Work Environment under the SHRL and CHRL

Claims for employment discrimination and hostile work environment, whether under the SHRL or the CHRL, must sufficiently allege facts giving rise to an inference of discriminatory animus (*see Serrano v City of New York*, 226 AD3d 575 [1st Dept 2024]; *Etienne v MTA New York City Transit Auth.*, 223 AD3d 612 [1st Dept 2024]; *Hribovsek v United Cerebral Palsy of New York City*, 223 AD3d 618 [1st Dept 2024]).

To the extent Plaintiff relies on Fiorillo's suggestion that he "liked buying drugs" and Pitman's query "What is a Dominican doing in Ukraine", these are at best "stray remarks" which

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 11 of 14

even if somewhat derogatory are nonactionable (*Etienne*, 223 AD3d 612, 613*; Lent v City of New York*, 209 AD3d 494, 495 [1ˢᵗ Dept 2022]; *Kwong v City of New York*, 204 AD3d 442, 444[1ˢᵗ Dept 2022] *Tihan v Apollo Mgmt. Holdings, L.P.*, 201 AD3d 557, 558 [1ˢᵗ Dept 2022]); *Suri v Grey Glob. Grp., Inc.*, 164 AD3d 108, 111 [1ˢᵗ Dept 2018]; *Fruchtman v City of New York*, 129 AD3d 500, 501 [1ˢᵗ Dept 2015]). There is no allegation here that plaintiff's workplace was permeated with ongoing discriminatory behavior. Thus, the hostile environment claim cannot survive.

Plaintiff alleges that there was a purported attempt to give him a bad evaluation which never was completed, that he believed co-workers visited his home when he was not there purportedly to break into it, that he was referred to a psychological evaluation which he passed within 24 hours, that he had two drug tests, had a leave request denied, and that he was assigned once to an unfavorable post at the back of a building. However, these are no adverse actions under the law (*see Bayley v. City of New York*, 2013 NY Slip Op 33473(U), 2013 WL 6926993 [Sup Ct NY Cty 2013] [No adverse action occurred where Plaintiff's "job responsibilities remained status quo."]; *Alshami v City Univ. of N.Y.,* 203 AD3d 592, 592 [1ˢᵗ Dept 2022]["unfavorable work assignments and unfair criticism do not constitute adverse employment actions"]; Kirkland-Hudson v. Mount Vernon City Sch. Dist., 2023 U.S. Dist. LEXIS 54339, at *63 [S.D.N.Y. 2023]["sending plaintiff to undergo a medical examination, even if inappropriate under the circumstances, does not constitute an adverse employment action unless accompanied by a material change in the terms and conditions of plaintiff's employment."]).

Plaintiff's claim that he was kicked out of a gym after an hour, or that he was denied leave after having been granted an extended leave are also not actionable under either the City or State HRL. Indeed, "[w]hether brought under the State or the City Human Rights Law, the claim

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No.  001

Page 12 of 14

will not succeed if the offending actions are no more than petty slights or trivial inconveniences" (*Franco v Hyatt Corp.,* 189 AD3d 569, 569 [1st Dept 2020]; see also *Nidzon supra at 350* [finding that the denial of a vacation request does not rise to the level of adverse employment action]).

Plaintiff also fails to sufficiently allege facts which give rise to an inference of discrimination based on his race or national origin (*see Appleton v. City of New York*, 2019 NY Slip Op 30627(U), 2019 WL 1206347 [Supreme Ct, NY Cty 2019]). Nor does he plausibly allege that he was subjected to unequal treatment because of his protected characteristic so as to warrant sustaining his City HRL claim.

Moreover, Plaintiff's assertions that only Dominican officers were punished are conclusory, and he has not alleged with sufficiency specificity that other officers who were treated better were similarly situated to him (*see Serrano*, 226 AD3d 575, 575; *Etienne*, 223 AD3d 612, 612 [1st Dept 2024]).

In sum, in light of the foregoing all the State and City HRL claims must be dismissed.

Cross-Motion to Amend

Finally, because these deficiencies are not remedied by the additional allegations of the SAC, the motion to amend is denied. While it is well established that leave to amend a pleading shall be freely granted absent prejudice or surprise resulting from the delay (see CPLR 3025 [b]), the First Department has consistently held that in order to conserve judicial resources, an examination of the proposed amendments is warranted and "leave to amend will be denied where the proposed pleading fails to state a cause of action" or "is palpably insufficient as a matter of law" (*see Davis & Davis v. Morson*, 286 AD2d 584 [1st Dept. 2001]).

155486/2023   DUME, JOSE vs. CITY OF NEW YORK ET AL
Motion No. 001

Page 13 of 14

While Plaintiff focuses on losing out on overtime, he still has not alleged a causal connection between a lack of overtime and an act of protected activity under § 75-b. Indeed, even in the Second Amended Complaint, Plaintiff alleges a four-month gap in time between the December 23, 2022 denial of overtime time and his September 6, 2022 complaint, which negates a finding of a causal connection. He also fails to allege any comments connecting denial of overtime and his complaints.

To the extent Plaintiff alleges he lost overtime within three weeks of making a complaint, the Second Amended Complaint does not in fact identify any denial of overtime which occurred three weeks after either the first complaint (sometime prior to March 2021), or the second complaint made on September 6, 2022.

Plaintiff, for the first time, alleges in the Second Amended Complaint that the Charges and Specifications caused him to lose opportunities to be transferred to preferrable assignments. (see SAC at ¶¶260-274). Yet, Plaintiff fails to allege an inference of discrimination based on his race or national origin in relation to this claim or any other, as he does not provide specific comparators or other details.

Accordingly, it is hereby

ORDERED that the motion to dismiss is granted and the complaint is dismissed, and it further

ORDERED that the motion to amend the complaint is denied.

This constitutes the Decision and Order of the Court. 20250326153658ACHESLERF309BF04D86C437E9685B1780A3927E1

| 3/26/2025 | | | |
|---|---|---|---|
| **DATE** | | **ARIEL D. CHESLER, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

[* 14]